**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

KENDON HAUGE SCHWEBKE,

                Petitioner,

vs.

JOHN FAYRAM,

                Respondent.

No. 09-CV-70-LRR

**ORDER**

*TABLE OF CONTENTS*

**I.**     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.**    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
      *A.*    *Pre-Trial, Post-Trial and Sentencing* . . . . . . . . . . . . . . . . . . . . . . . **2**
      *B.*    *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
      *C.*    *State Post-Conviction Relief Action* . . . . . . . . . . . . . . . . . . . . . . . **4**
      *D.*    *Federal Habeas Corpus Action* . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**III.**   **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**IV.**   **STANDARDS OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**V.**     **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
      *A.*  *Insufficient Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
      *B.*  *Fifth Amendment Violation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
      *C.*  *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . **16**

**VI.**   **CERTIFICATE OF APPEALABILITY** . . . . . . . . . . . . . . . . . . . . . . **21**

**VII.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

# I. INTRODUCTION

The matter before the court is Petitioner Kendon Hauge Schwebke's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus" ("Petition") (docket no. 1). Petitioner filed the Petition on May 15, 2009.[1] In the Petition, Petitioner challenges the legality of his conviction for murder in the second degree.

# II. PROCEDURAL BACKGROUND

## A. Pre-trial, Post-trial and Sentencing

On September 23, 2002 in the Iowa District Court for Hardin County ("Iowa District Court"), Petitioner was charged with murder in the first degree, in violation of Iowa Code §§ 707.1 and 707.2. *State v. Schwebke*, No. 02421, FECR010961 (Hardin Cnty. Dist. Ct. 2003).[2] On January 31, 2003, Petitioner filed a motion to suppress evidence seized in the first search of the farmhouse, which police conducted without a warrant, as well as statements he made during a five-hour interrogation. *Id.*; *State v. Schwebke* (*Schwebke I*), 690 N.W.2d 700, No. 03-1194, 2004 WL 2169400 (Iowa Ct. App. Sept. 29, 2004) (Table). The Iowa District Court denied the motion to suppress.

> The district court agreed with [Petitioner] that at some point during the interrogation, the interview became custodial, such that the right to counsel attached. The district court found, however, that [Petitioner] knew and understood his rights, but did not clearly and unequivocally invoke his right to counsel. The district court further found that [Petitioner] voluntarily

---

[1] Petitioner signed the Petition on May 15, 2009, and the Clerk of Court filed it on May 22, 2009. *See* Fed. R. App. P. 4(c) (outlining the prison-mailbox rule); *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc) ("[A] *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."), *abrogated on other grounds by Riddle v. Kemna*, 523 F.3d 850, 856 (8th Cir. 2008).

[2] Iowa state court records may be accessed at http://www.iowacourts.state.ia.us. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing a court's ability to take judicial notice of public records).

> waived his right to remain silent, and thus the interrogators did not violate [Petitioner's] rights by continuing to question him after the interrogation became custodial.

*Schwebke I*, 2004 WL 2169400, at *2.

On June 20, 2003, a jury found Petitioner guilty of the lesser charge of murder in the second degree in violation of Iowa Code § 707.3. *State v. Schwebke*, No. 02421, FECR010961 (Hardin Cnty. Dist. Ct. 2003); *see also Schwebke I*, 2004 WL 2169400, at *6. "[The jury] found that [Petitioner], or someone that he aided and abetted, under section 703.1, intentionally shot Jim Worsfold; that that act caused the death of Worsfold; and that [Petitioner] or someone he aided and abetted acted with malice aforethought." *Schwebke I*, 2004 WL 2169400, at *6. On July 15, 2003, Petitioner filed a motion in arrest of judgment and a motion for a new trial. *State v. Schwebke*, No. 02421, FECR010961 (Hardin Cnty. Dist. Ct. 2003). On July 21, 2003, the Iowa District Court sentenced Petitioner to a term not to exceed fifty years. *Id.* On July 22, 2003, the Iowa District Court denied Petitioner's motion in arrest of judgment and motion for a new trial. *Id.*

### B.  Direct Appeal

On July 28, 2003, Petitioner filed a notice of appeal. *Id.* On appeal, Petitioner alleged that "the district court erred in finding a voluntary waiver of his right to remain silent and in finding he failed to invoke his right to counsel." *Schwebke I*, 2004 WL 2169400, at *2. Petitioner also alleged that there was insufficient evidence to support his conviction of murder in the second degree. *Id.* On September 29, 2004, the Iowa Court of Appeals agreed with the Iowa District Court that, while the police interrogation of Petitioner turned custodial at some point during the interview, Petitioner voluntarily and knowingly waived his right to counsel and did not unequivocally request an attorney. *Id.* at *3-6. The Iowa Court of Appeals further found that there was sufficient evidence to support each of the elements of the crime of murder in the second degree. *Id.*

3

Accordingly, the Iowa Court of Appeals affirmed Petitioner's conviction. *Id.* On October 18, 2004, Petitioner filed an application for further review to the Iowa Supreme Court, which was denied on January 4, 2005. *State v. Schwebke*, No. 03-1194 (Iowa Ct. App. 2004). On January 7, 2005, *procedendo* issued. *Id.*

### C. State Post-Conviction Relief Action

On March 31, 2006, Petitioner filed an application for post-conviction relief, alleging ineffective assistance of trial counsel. *Schwebke v. State* (*Schwebke II*), 766 N.W.2d 648, No. 07-1027, 2009 WL 605823, at *3 (Iowa Ct. App. March 11, 2009) (Table); *see also Schwebke v. State*, No. 02421, PCCV079873 (Hardin Cnty. Dist. Ct. 2007). Petitioner subsequently filed an applicant's brief and pro se argument in which Petitioner claimed his trial and appellate counsel provided ineffective assistance in five ways. *Schwebke II*, 2009 WL 605823, at *3.

On May 11, 2007, the Iowa District Court denied several of Petitioner's claims in the application for post-conviction relief. *Id.* On May 22, 2007, Petitioner moved to enlarge or amend the judgment, requesting judgment on three of the five ineffective assistance of counsel claims raised in the brief. *See Schwebke v. State*, No. 02421, PCCV079873 (Hardin Cnty. Dist. Ct. 2007); *see also Schwebke II*, 2009 WL 605823, at *3.

On June 8, 2007, prior to receiving a ruling on the motion to enlarge or amend the judgment, Petitioner filed a notice of appeal with respect to the Iowa District Court's denial of post-conviction relief. *See Schwebke v. State*, No. 07-1027, PCCV079873 (Iowa Ct. App. 2009). On June 25, 2007, Petitioner filed a motion for limited remand that the Iowa Supreme Court granted on July 26, 2007. *Id.* On August 30, 2007, the Iowa District Court denied Petitioner's motion to enlarge or amend the judgment. *See Schwebke v State*, No. 02421, PCCV079873 (Hardin Cnty. Dist. Ct. 2007). On March 11, 2009, the Iowa Court of Appeals affirmed the Iowa District Court's denial of Petitioner's application for post-conviction relief. *Schwebke v. State*, No. 07-1027, PCCV079873 (Iowa Ct. App.

2009); *see also Schwebke II*, 2009 WL 605823.   On April 1, 2009, Petitioner filed an application for further review, and on May 5, 2009, the Iowa Supreme Court denied the application.   *See Schwebke v. State*, No. 07-1027 (Iowa Ct. App. 2009).   On May 12, 2009, *procedendo* issued.   *Id.*

### D.  Federal Habeas Corpus Action

On May 15, 2009, Petitioner filed the instant Petition.   On July 6, 2009, Respondent filed an Answer (docket no. 4), arguing that Petitioner's claim of newly discovered evidence had not been properly exhausted under 28 U.S.C. § 2254(b)(1).   On July 13, 2009, Respondent filed a Motion to Dismiss (docket no. 6), and on July 27, 2009, Petitioner filed a Resistance (docket no. 9).   On February 16, 2010, the court ordered Petitioner to either: (1) voluntarily dismiss the instant action and pursue the remedies available in state court or (2) voluntarily dismiss the unexhausted newly discovered evidence claim and pursue relief on the remaining claims.   *See* Order (docket no. 12).   On February 22, 2010, Petitioner filed a Response (docket no. 14) in which he chose the latter.

On April 14, 2010, Petitioner filed an Amended Brief (docket no. 26),[3] which contained three claims: (1) there was insufficient evidence to convict Petitioner of murder in the second degree; (2) the trial court erred in failing to grant Petitioner's motion to suppress statements taken in violation of his Fifth Amendment rights; and (3) trial and appellate counsel were ineffective for not objecting to and not arguing prosecutorial misconduct.[4]   On April 29, 2010, Respondent filed a "Merits Brief" (docket no. 28).   On

---

[3] On March 30, 2010, Petitioner filed his original brief (docket no. 20).   On April 13, 2010, Petitioner filed a motion (docket no. 24) in which he requested permission to amend his brief to add a supplemental index, fill in appendix page references and correct misquoted statements.   The motion was unopposed by counsel.   On April 14, 2010, the court granted the motion.   *See* Order (docket no. 25).

[4] The Petition contained an additional claim of ineffective assistance of trial counsel (continued…)

May 24, 2010, Petitioner filed a Reply (docket no. 33).   The Petition is now fully submitted and ready for decision.

### III.   FACTUAL BACKGROUND

The Iowa Court of Appeals summarized the facts on direct appeal,   *Schwebke I*, 2004 WL 2169400, at *1-2, and on Petitioner's appeal from the Iowa District Court's denial of post-conviction relief, *Schwebke II*, 2009 WL 605823, at *1-3.   The court now summarizes the facts relevant to this action.[5]

On September 4, 2002, Jim Worsfold, Petitioner's father's tenant, disappeared. *Schwebke I*, 2004 WL 2169400, at *1.   Responding to a call from a friend of Worsfold and without a warrant, police entered the farmhouse where Worsfold resided on September 9, 2002, and found blood in the upstairs bedroom of the house.   *Schwebke II*, 2009 WL 605823, at *1.   That same day, Petitioner reported Worsfold missing and consented to a search of the farmhouse, which the officers conducted pursuant to a valid warrant issued the following day.   *Id.*

On September 17, 2002, police asked Petitioner to come to the police station for an interview.   *Id.*   At the outset of the interview, Agent Mel McCleary informed Petitioner of his rights by having Petitioner read his rights aloud and stopping after each right to confirm that Petitioner understood it.   *Id.*   During the interrogation, Petitioner implicated Mike Mikesell as the murderer, admitted to participating in the disposal of Worsfold's

---

[4](…continued)
for not objecting to jury instructions.   Petitioner did not argue this ineffective assistance of counsel claim in his Amended Brief, and, thus, the court concludes that Petitioner waived or abandoned it.

[5] The court summarizes the facts in the light most favorable to the verdict.   *See Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *Copeland v. Washington*, 232 F.3d 969, 971 (8th Cir. 2000); *Mallett v. Bowersox*, 160 F.3d 456, 458 (8th Cir. 1998).   When relevant, additional facts are discussed in the court's analysis.   For a more exhaustive summary of the facts, see *Schwebke I*, 2004 WL 2169400 and *Schwebke II*, 2009 WL 605823.

body and alerted officers to the location of Worsfold's remains. *Id.* "Although he was informed at the beginning of the interrogation that no charges had been filed against him, that he was not under arrest, and was free to leave at anytime [sic], [Petitioner] was arrested at the close of the five-hour interrogation and subsequently charged with first-degree murder of Jim Worsfold." *Schwebke I*, 2004 WL 2169400, at *1.

The subsequent investigation and trial of Petitioner produced further evidence. "[Petitioner] harbored a strong dislike for Worsfold. In the few weeks before Worsfold's death[, Petitioner] had on several occasions threatened to kill him. The threats included threats to shoot Worsfold and threats to use guns on Worsfold." *Schwebke II*, 2009 WL 605823, at *6.

> When Worsfold's body was found he had been shot in the head with a .22 caliber round. Recovered during the investigation was a .22 caliber, semiautomatic rifle belonging to [Petitioner]. The cartridge case at the scene of the shooting, stained with Worsfold's blood, the bullet removed from Worsfold, and a test shot fired from [Petitioner's] rifle were all consistent with one another. On the night of Worsfold's disappearance, [Petitioner] was seen standing in the dark holding a rifle. The rifle was the same rifle [he] asked another to hide for him the day after the shooting. Blood identified as Worsfold's was discovered in the box of [Petitioner's] truck . . . .

*Id.* at *1.

During the trial, Petitioner testified that:

> On the night of Worsfold's death, Mikesell got in [Petitioner's] truck and made him take him to Worsfold's residence to talk to Worsfold. Mikesell threatened [Petitioner] with [Petitioner's] .22 caliber rifle when [Petitioner] asked Mikesell why he wanted to talk to Worsfold . . . . [Petitioner] saw that Mikesell had the .22 rifle with him when he went upstairs to "talk" to Worsfold, but he did not believe Mikesell would ever shoot Worsfold and at the most they would get in a fist fight. He then heard a shot and Mikesell came running out of the

house and stated they needed to get out of there and that he
had "warned" Worsfold.

*Id.* at \*2.  Petitioner testified that he only found out that Worsfold had been shot a couple
of days later.  *Id.*  He stated that he "initially refused to help Mikesell move the body but
Mikesell pulled [a gun] on him and threatened him and his father once again."  *Id.*
Petitioner also testified that he wanted to tell the police right away but was afraid of
Mikesell, and he admitted that he lied to Agent McCleary during his initial interview.  *Id.*

### IV.  STANDARDS OF REVIEW

The United States Code provides the standard for habeas corpus review:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of
erroneous decisions—those of law and those of fact . . . ."  *Weaver v. Bowersox*, 241 F.3d
1024, 1029 (8th Cir. 2001).

Regarding an erroneous decision of law, a state court decision can be "contrary to"
Supreme Court precedent either (1) "if the state court arrives at a conclusion opposite to
that reached by [the Supreme Court] on a question of law," or (2) "if the state court
confronts facts that are materially indistinguishable from a relevant Supreme Court
precedent and arrives at a result opposite to [that precedent]."  *Williams v. Taylor*, 529
U.S. 362, 405 (2000); *see also Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (stating
that federal courts have "only limited and deferential review of underlying state court
decisions" in habeas corpus cases).

An "unreasonable application" of Supreme Court precedent can arise in one of two ways:

> First, a state-court decision involves an unreasonable application of [the Supreme Court]'s precedent if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 407. Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407-08 (alteration in original) (quoting *Green v. French*, 143 F.3d 867, 869 (4th Cir. 1998). Furthermore,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411. The Eighth Circuit enunciated the following standard for an unreasonable application of law: "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (quoting *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999).

Applying these standards to the present case, the court must determine whether 1) the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law or 2) correctly identified the applicable principles of federal law but

unreasonably applied that law to the facts of Petitioner's claims. *See, e.g.*, *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (discussing applicable standard); *Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (same); *Weaver*, 241 F.3d at 1029-30 (same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland*, 232 F.3d 969 at 973 (same).

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact." *Weaver*, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1)[6]; *see also Weaver*, 241 F.3d at 1030 ("[O]n habeas review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

Petitioner seeks relief under 28 U.S.C. § 2254(d)(1) and 28 U.S.C. § 2254(d)(2). He contends that the Iowa courts' decisions regarding his Fifth and Sixth Amendment rights claims were contrary to, or involved an unreasonable application of, clearly established federal law. He further contends that his conviction was based on an unreasonable determination of the facts in light of the evidence presented.

---

[6]         In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

## V. DISCUSSION[7]

Petitioner's brief contains three claims: (1) there was insufficient evidence to convict him of murder in the second degree; (2) the trial court erred in failing to grant his motion to suppress regarding statements taken in violation of his Fifth Amendment rights; and (3) trial and appellate counsel were ineffective for not objecting to and not arguing that the prosecution committed misconduct.  The court finds Petitioner's claims to be without merit and, therefore, finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254.

### A. Insufficient Evidence

Petitioner claims his right to due process was violated because there was insufficient evidence to convict him of murder in the second degree, and that the evidence instead supports the lesser charge of accessory after the fact.  In deciding Petitioner's claim that insufficient evidence exists to sustain his conviction for second-degree murder, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992).  "All conflicting inferences that arise from the historical facts must be resolved in favor of the prosecution." *Nance v. Norris*, 392 F.3d 284, 290 (8th Cir. 2004) (citing *Jackson*, 443 U.S. at 326).

The jury in this case had to determine whether all the elements of aiding and abetting were satisfied.  The elements of aiding and abetting are: "'1) that the defendant associated himself with the unlawful venture; 2) that he participated in it as something he

---

[7] The court's February 16, 2010 Order (docket no. 12) addressed whether Petitioner fully exhausted his state court remedies pursuant to 28 U.S.C. § 2254(b)(1).  The court determined that Petitioner's newly discovered evidence claim was not fully exhausted.  Here, Respondent concedes in the Response Brief that Petitioner exhausted his remaining claims, and the court will not revisit the issue.

wished to bring about; and 3) that he sought by his actions to make it succeed.'" *United States v. McCracken*, 110 F.3d 535, 540 (8th Cir. 1997) (quoting *United States v. Duke*, 940 F.2d 1113, 1117 (8th Cir. 1991)).

On direct appeal, the Iowa Court of Appeals found that, "while no direct evidence was adduced pointing to [Petitioner] as the one who shot Worsfold, there was clearly enough proof to convince a rational trier of fact that [Petitioner] aided and abetted whoever did." *Schwebke I*, 2004 WL 2169400, at *6. The Iowa Court of Appeals recited the following applicable facts:

> Evidence was presented indicating that Worsfold and [Petitioner] had had heated differences, and that on at least one occasion, [Petitioner] had threatened Worsfold with a gun. [Petitioner] admitted his presence on the farmstead at the time Worsfold was killed. [Petitioner] owned the rifle that was used to shoot and kill Worsfold. [Petitioner] actively participated in the attempt to conceal the crime by attempting to clear blood from the farmhouse and dispose of the murder weapon and the body of Worsfold. Blood from the victim was found in [Petitioner's] truck, which he used to dispose of the body. Only [Petitioner] identified the location of the victim's body.

*Id.*

It was reasonable for the Iowa Court of Appeals to determine that substantial evidence supports the elements necessary to prove Petitioner aided and abetted a murder in the second degree. Petitioner claims that he had no prior knowledge of the crime, his subsequent actions were the result of his fear of Mikesell and he therefore did not have the requisite mental state to be guilty under an aiding and abetting theory. He claims instead that his participation only indicates that he was an accessory after the fact.

The jury received evidence of Petitioner's involvement at several stages, however. Prior to Worsfold's disappearance, the two had had heated differences, and Petitioner had threatened Worsfold with a gun. Petitioner was seen on the day of the murder holding a .22 caliber rifle that was used to shoot Worsfold and he admitted to assisting in disposing

of Worsfold's body with his truck after the murder. Because the court resolves conflicting inferences in favor of the prosecution, *Nance*, 392 F.3d at 290, a jury could reasonably conclude beyond a reasonable doubt that Petitioner's actions were the result of his desire to bring about the results, and he sought by his actions to make it succeed. *See McCracken*, 110 F.3d at 540. The court finds that it was reasonable for the Iowa Court of Appeals to conclude that the jury could find Petitioner guilty beyond a reasonable doubt and that the evidence, when viewed in the light most favorable to the prosecution, is sufficient to sustain Petitioner's conviction of murder in the second degree.

### B.  Fifth Amendment Violation

Petitioner argues that his Fifth Amendment right to counsel was violated.[8] Specifically, Petitioner states that he was in custody during the police interrogation on September 17, 2002, that he clearly and unambiguously requested counsel and that Agent McCleary continued his interrogation despite that request. Petitioner claims that the Iowa District Court unreasonably denied his motion to suppress statements taken after his alleged request for counsel. The respondent acknowledges that the interrogation turned custodial at some point but claims that Petitioner waived his right to counsel when, despite acknowledging that he understood his rights, he continued with the interview without clearly and unequivocally invoking his right to counsel.

An individual taken into custody must be warned that he "has the right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted." *Davis v. United States*, 512 U.S. 452, 460-61 (1994).

---

[8] Petitioner's heading in the Amended Brief mentions a Sixth Amendment violation in connection with the Fifth Amendment claim. *See* Amended Brief at 26. However, as the Brief does not argue a Sixth Amendment violation, the court need not consider such claim.

> A waiver is "knowing and intelligent" where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice . . . .

*Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Thereafter, for a suspect to invoke his *Miranda* right to counsel, he must do so clearly and unambiguously. *Davis*, 512 U.S. at 459; *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003); *see Berghuis v. Thompkins*, 560 U.S. ___, 130 S. Ct. 2250, 2259-60 (2010). The request is clear and unambiguous where the accused makes "his desire to have counsel present sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. When a suspect unambiguously requests counsel, that suspect "is not subject to further interrogation by authorities until counsel has been made available to him . . . ." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). If, however, "the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461-62; *see also Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (holding that the defendant's question, "Could I call my lawyer?" was not a clear and unambiguous request for counsel requiring the officer to stop the interview); *see also Davis*, 512 U.S. at 462 (holding that the statement "[m]aybe I should talk to a lawyer" was not a request for counsel).

Petitioner argues that he invoked his right to counsel, the police should have stopped all questions at that point and his responses to further questioning did not constitute a waiver. Amended Brief at 37-38 (relying on *Edwards v. Arizona*, 451 U.S. at 484-85). The Court in *Davis* declined to extend *Edwards*, however, stating that, "when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning 'would transform the

14

*Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity.'" 512 U.S. at 460 (quoting *Michigan v. Mosley*, 423 U.S. 96, 102 (1975)).

Petitioner cites three statements as requests for counsel:

> What do, you think I should have a lawyer here?

> And, uh, definitely gonna see a lawyer and I'm definitely gonna talk with 'em. But I . . . .

> That's why . . . that's why . . . that's why I want . . . want to talk to the lawyer because I don't . . . I disapprove of this . . . I don't . . . I was not . . . I was not in a plan . . . .

Amended Brief at 33, 35-36. The record also indicates that Petitioner made additional statements concerning counsel:

> I wanted to . . . I wanted to talk with [my lawyer] and let him know that I was gonna come here and tell you guys . . . I wanted to talk to an attorney basically to know just what . . . how, you know, how I do all this and then be honest, you know, and just . . .

> No, it . . . I just want . . . I want . . . want my lawyer just to . . .

*Schwebke I*, 2004 WL 2169400, at *4; *see also State v. Schwebke*, No. 02421, FECR010961 (Hardin Cnty. Dist. Ct. 2003).

On direct appeal, the Iowa Court of Appeals concluded that "none of these statements could be construed as a request to have a lawyer present at the interview before [Petitioner] would answer any further questions." *Schwebke I*, 2004 WL 2169400, at *4. The Iowa Court of Appeals also found that Petitioner voluntarily waived his right to counsel. *Id.*

The court agrees with the Iowa Court of Appeals's findings. The statements made by Petitioner regarding counsel were not an unequivocal request for counsel because they could be understood to have had more than one meaning. *See Davis*, 512 U.S. at 459.

On the day of the interrogation, Petitioner had planned to visit an attorney.  Within that context, the statements could be interpreted as reference to a prior desire to seek legal counsel.  Further, the statements are not unequivocal because they merely make reference to seeking counsel at some point as opposed to requesting counsel for purpose of the interview/interrogation.  The court finds that it was reasonable for the Iowa Court of Appeals to determine that Petitioner did not clearly and unambiguously request counsel, he voluntarily waived his right to counsel and thus his Fifth Amendment rights were not violated.

### C.  Ineffective Assistance of Counsel

Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated because the Iowa courts unreasonably applied the standard for ineffective assistance of counsel when they held that neither trial counsel nor appellate counsel were ineffective by failing to object to or argue prosecutorial misconduct.  Petitioner focuses on statements made during the opening and closing statements where: (1) the prosecution characterized Petitioner as a liar and (2) the prosecutor expressed his personal opinion about Petitioner's credibility and guilt.  Petitioner believes that, as a whole, the prosecutor's statements violated his right to a fair trial and that it is reasonably probable that, had his counsel objected to the statements, the result of the trial would have been different.  Respondent argues that statements calling a defendant a liar are not categorically improper and that in this case the statements were proper because they were supported by the record.  Respondent also argues that the prosecution is free to attack the credibility of a witness during opening and closing statements.

The Sixth Amendment provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  Furthermore, there is a constitutional right to effective assistance

of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Douglas v. California*, 372 U.S. 353, 357-58 (1963).

In *Strickland v. Washington*, the Supreme Court explained that a violation of the right to effective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). While *Strickland* requires a showing of both deficient performance and prejudice, "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. There is a strong presumption of competence and reasonable professional judgment. *Id.* at 689; *see also Sanders v. Trickey*, 875 F.2d 205, 207-08 (8th Cir. 1989) (stating that courts must afford counsel broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking). The court must "determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

In this case, Petitioner is claiming that his counsel was ineffective by not objecting to prosecutorial misconduct. Where the prosecutor 1) commits misconduct and 2) that misconduct results in prejudice that deprives the defendant of a fair trial, the prosecutor has committed misconduct resulting in a violation of due process. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003)). The standard for prosecutorial misconduct is whether the "prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered [the defendant's] entire trial fundamentally unfair." *Moore v. Wyrick*, 760 F.2d 884, 886 (8th Cir. 1985) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

If a prosecutor's comment is supported by evidence at the trial, it is unobjectionable. *James v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999). "So long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they . . . are free to use colorful and forceful language in their arguments to the jury." *United States v. Robinson*, 110 F.3d 1320, 1327 (8th Cir. 1997). With respect to comments during closing argument in particular, "[f]ederal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so

18

outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *James*, 187 F.3d at 869.

In assessing whether prosecutorial misconduct is prejudicial, the court looks at the following factors: "'(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court.'" *United States v. Conrad*, 320 F.3d 851, 855 (8th Cir. 2003) (quoting *United States v. Hernandez*, 779 F.2d 456, 460 (8th Cir. 1985)).  There have been several cases where a prosecutor's statements were not sufficiently prejudicial to deprive a federal habeas petitioner of the right to a fair trial.  *See, e.g., James*, 187 F.3d at 868-69 (prosecutor's statement that Petitioner was "a big time, drug dealing, murdering, robbing slime" during the opening statement did not deprive him of a fair trial); *Culkin v. Purkett*, 45 F.3d 1229, 1235 (8th Cir. 1995) (prosecutor comparing the petitioner to serial killer John Wayne Gacy in closing argument did not deprive the petitioner of a fair trial); *Moore*, 760 F.2d at 886-87 (prosecutor drawing an adverse inference from the petitioner's failure to call witnesses was not a violation of due process).

In his appeal from the Iowa District Court's denial of post-conviction relief, Petitioner claimed that "the prosecutor committed misconduct during opening statement and closing arguments and while questioning him." *Schwebke II*, 2009 WL 605823, at *7. The Iowa Court of Appeals grouped the prosecutor's statements into four categories:

> (1) characterizing [Petitioner's] conduct as callous; (2) stating [Petitioner] had the ability to stop the murder and did not, thereby implying an incorrect legal standard to the jury, namely that he had [a] duty to stop the murder; (3) stating that [Petitioner] was deceitful and had lied; and (4) using argument to personally vouch for State's witnesses and express a personal opinion as to evidence and guilt.

*Id.*  The Iowa Court of Appeals found that the prosecutor's statements within the first three categories were not improper and, therefore, did not constitute prosecutorial misconduct

because they were grounded in or inferred from evidence presented at trial.  *Id.* at *8-10.

The Iowa Court of Appeals determined, however, that two statements within the fourth category were improper.  *Id.* at *10.  The first statement, part of the opening statement, is as follows:

> You'll hear from Robert Harvey and Mike Halverson, the lab DNA criminalists who did DNA testing on the blood that was found . . . in the kitchen, in the bed of [Petitioner's] truck, . . . and on . . . the carpet.  They tested all that as well.  They did, what I will consider, a thorough job in working at this case.

*Id.*  The second statement, in the closing argument, is as follows:

> And another thing is that you can't divorce Mike Mikesell from [Petitioner] . . . They are hand in hand in this case.  We would prove . . . Mike Mikesell's guilt the same way we did [Petitioner's] as an aider or abettor.  Can I tell you who shot [Worsfold]?  No.  But I do know that Mike Mikesell and [Petitioner], the defendant in this case, murdered Jim Worsfold.  I know that.

*Id.*  The Iowa Court of Appeals found that the statements improperly expressed personal opinions as to the criminalists' credibility and as to Petitioner's guilt.  *Id.* at *10-11.  Defense counsel did not object to the first statement and objected to the second statement.  *Id.*  The Iowa Court of Appeals determined that, although the statements were improper, they did not rise to the level of denying Petitioner a fair trial.  *Id.*  Petitioner's brief cites two additional remarks as blatant prosecutorial misconduct: (1) "The evidence shows that in this case is that [sic] they committed Murder in the First Degree and that [Petitioner] is guilty"; and (2) "And it all adds up that [Petitioner], this man sitting here, was guilty of murder in the first degree."  Amended Brief at 49.

It was reasonable for the Iowa Court of Appeals to determine that the statements in the first three categories did not amount to misconduct.  The statements were supported by evidence in the record, including the fact that Petitioner admitted at trial that he was

untruthful to Agent McCleary.[9]  *See James*, 187 F.3d at 870.   Furthermore, it was reasonable for the Iowa Court of Appeals to determine that the statements that rose to the level of misconduct were not prejudicial to Petitioner.  The small number of comments in light of all the other evidence presented at trial suggests that there was no cumulative effect from the statements.  Even if the prosecutor asserted personal opinions during the opening statement and closing argument, any prejudicial effect could not outweigh the ample evidence that incriminated Petitioner.  Furthermore, the court took curative measures at trial to eliminate any prejudicial effect of the comments by instructing the jury that opening statements and closing arguments may not be considered as evidence.  Statement of the Case and Instructions of the Court, Petitioner's App. (docket no. 19-9) at 775.  Because there was no prosecutorial misconduct that deprived Petitioner of a fair trial, no violation of petitioner's constitutional right to effective assistance of counsel occurred.

## VI.   CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, "the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a).   "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . ."  28 U.S.C. § 2253(c)(1).  A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b).  *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).   Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if "a petitioner has made a substantial showing of the denial of a constitutional right."  *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (describing standard); *Garrett v. United States*, 211 F.3d 1075, 1076 (8th Cir.

---

[9] Petitioner admitted to untruthfulness during the testimony but also frequently omitted information from authorities and friends of Worsfold throughout the investigation. For a more exhaustive list of contradictory statements and examples of half-truths cited by the Iowa Court of Appeals, *see Schwebke II*, 2009 WL 605823, at *9.

2000) (same); *Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir. 1998) (same); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (same); *Tiedeman*, 122 F.3d at 522 (same). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569; *see also Miller-El*, 537 U.S. at 336 (explaining standard).

Courts can reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Petitioner failed to make the requisite "substantial showing" with respect to the claims he raised in his Petition. Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall not grant a certificate of appealability under 28 U.S.C. § 2253. If Petitioner desires further review of his 28 U.S.C. § 2254 Petition, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 522.

## VII.  CONCLUSION

The court finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254.  The Iowa courts' adjudication of Petitioner's claims did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, the Petition (docket no. 1) is **DENIED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent.  In addition, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of November, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA